THOMAS L. LACKEY, plaintiff in error *vs.* THE GEORGIA HOME INSURANCE COMPANY, defendant in error.

Under section 2770 of the Revised Code of this State, "a second insurance on the same property, without the consent of the insurer voids his policy." And this is true even though the second insurance, valid upon its face, is voidable by the second company on the ground of the failure of the insured to give it notice, at the time the policy was procured, of a prior insurance of the same property in another company.

Insurance. Before Hon. JOHN COLLIER, presiding by consent. Fulton Superior Court. December, 1870.

This was assumpsit by Lackey against said company, upon its policy of insurance for $850 00 on his two-story framed dwelling-house, and $150 00 on his one-story, framed store-

house, issued at Columbus, Georgia, on the 23d of August, 1867, and to run one year. One of the stipulations of this policy was: "This policy is made and accepted in reference to the conditions therein contained, which are to be used in order to explain the rights and obligations of the parties to this contract, in all cases not herein specially provided for." And one of the conditions therein specified, was: "And provided further, if the assured shall have already any other insurance against loss or damage by fire on the property hereby insured, or shall hereafter procure any further insurance thereon, without notice to and written consent of this company endorsed hereon, this policy shall then be null and void. And if any subsequent insurance shall be made upon the property herein named, which, with other sums insured, shall, in the opinion of this company, amount to an over-insurance, said company reserves the right to cancel this policy, by paying to the assured the unexpired premium *pro rata*." The defense was, that, when this policy was issued, Lackey had other insurance on said property, and during its continuance took yet other insurance on said property, of which he gave defendant no notice. Lackey testified that the said property was his, was worth $2,700 00, the two-story house being worth $2,200 00 and the other $500 00; that they were destroyed by fire in October, 1867; that he made proof of loss and gave notice according to the requirements of the policy.

This policy and proof were read in evidence. The proof stated that when burnt, the property was insured also in the Security Insurance Company, of Louisville, Kentucky, to-wit: for $800 00 on said dwelling-house, from the 26th of September, 1867, for one year, and in the Ætna Insurance Company, for six months, from the 12th of February, 1867, for $200 00 on the dwelling and store, and $600 00 on his stock of groceries in said buildings. These two policies were also read in evidence. They contained like stipulations and conditions with that of defendant aforesaid. On

neither policy was there any memorandum of any insurance other than that expressed in *it*, and Lackey testified that he gave to neither notice of the prior or subsequent insurance. He denied stating, after the fire, to the agents of the two last named companies that he had no other insurance. He said he never had read either policy. Here plaintiff's cause was rested. A motion for non-suit because the defendant's policy was avoided by said prior and subsequent insurance was made, but the motion was overruled.

The agents of the defendant and said other companies each testified that they had no notice of said other policies. The agents of the Ætna and Security, both testified that Lackey told each of them, repeatedly, after the fire, that he had no insurance other than in their respective companies. And the agent of the Security testified that Lackey made out proof of his loss against the Security company, therein swore he had no insurance but theirs, but subsequently said he wished to show this proof to his brother, got it and never returned it, nor made any further claim on the Security company.

The Court charged the jury that "if plaintiff, since he procured the policy, sued on, from defendant, obtained other policies of insurance on the same property, and that without giving notice of the existence of such previous policy to such subsequent insurer, or of such subsequent insurance to such previous insurer, though that might void the last policy, yet it would not void the first policy," etc. The jury found for plaintiff.

Defendant moved for a new trial, upon the grounds that the verdict was contrary to law, etc., and that said charge was wrong. A new trial was granted on this last ground. That is assigned as error.

D. P. HILL; T. P. WESTMORELAND, for plaintiff in error. What is double-insurance: Phil. on Ins., secs. 359, 367, 368; 5th Hill's R., 298; 49th Penn. R., 14. Policy good as to part where parts are separable: 17th Mo. R., 258. If

second policy is void, first is valid: 23d Pick R., 418; 4
Allen (Mass.) R., 217; 6 Cush., (Mass.) 342; 2 Watts & S.
(Penn.) R., 506; 37th Maine R., 137; 5th Ohio R., 466;
Parsons on C., 458; 4 Zabriskie, 448; R. Code, secs. 2761,
2770; 6 Wend. R., 488.

L. J. GLENN & SON, for defendant. Defendant's policy
void for want of notice: 16 Peters' U. S. R., 496; 4 How-
ard's U. S. R., 220; 20 Barb. (N. Y.) R., 635; 22 N. Y.
R., 402; 5th Ohio R., 467; David vs. Hartford Ins. Co.,
Supreme Court of Iowa, April, 1862; R. Code, sec. 2770;
40th Ga. R., 135. This policy is entire, and being second,
without notice of other, is void: 10 Cush. (Mass.) R., 587;
3 Gray (Mass.) R., 583; 8th, 33; 25th Barb. (N. Y.) R.,
497; 45th Maine R., 472; 47th, 403; 51st, 110. Improper
charge: 30th Ga. R., 133. Construction of contracts: R.
Code, sec. 276. Amount of recovery: R. Code, sec. 2772.

McCAY, J.

Without doubt, there is an irreconcilable conflict in the
authorities upon this question. Upon one side, are the Su-
preme Courts of Massachusetts and Pennsylvania: 23 Pick
R., 418; 4 Allen Mass. R., 217; 6 Cushing R., 342; 2 Watts
and Serg't R., 506; 37 Maine R., 137. On the other side,
the Supreme Court of the United States, and the Supreme
Court of New York; 16th Peters' R., 496; 4 Howard R.,
220; 20 Barbour R., 635; 22 N. Y. R., 402; 5 Ohio R.,
467. The former Courts hold that the second policy does
not void the first, unless the second be a valid one—one
that can be recovered upon—and that, if the second com-
pany's policy can be shown to be void, even in consequence
of the fraudulent representations of the insured, the condi-
tion of the first policy is not broken, because there is, in fact,
no second insurance. The other cases hold, that if the sec-
ond policy is *apparently* good, good upon its face, if to void
it, proof must be introduced, especially if that proof be the-

fraud of the insured, then the condition of the first policy is broken.

A good deal may be said in favor of both of these views. Supposing that the object of the condition is merely to provide that the taking of the second policy shall be considered an abandonment of the first, it may not be fair to hold that the insured has given up his grasp upon the first until he has clearly a *hold* upon the second. Again, it may be said that here is a condition imposed by the company, on its own policy, over its own signature, and it is to be construed most strongly against it; and, as it is literally true that there is no second policy, the words of the condition are not broken.

In favor of the view taken in New York, and by the Supreme Court of the United States, it may be said that it is a violation of all principle to permit one to set up his own fraud; that it is beneath the dignity of a Court of justice to sit by and aid one to impose an obligation upon another, by showing that he, the plaintiff, has been guilty of a falsehood. We do not think it necessary to undertake to show, upon principle, which of these eminent tribunals is right. The decisions in all these cases turned upon the *contract*, upon its terms, and upon its meaning. The question here turns, not so much upon the contract as upon our statute. Our Code, section 2770, enacts as follows: "A second insurance, unless by consent of the insurer, voids his policy." Any contract made here, is made under this statute, no matter where the company resides. And this law would make void the first policy, though nothing was said in it about a second policy. The case in Georgia, therefore, turns rather on the law than on the contract.

The law is founded in public policy; it is intended to protect, not only insurance companies, but the public against the evils of double insurance. It is found that to permit double insurances, is to afford a temptation to self-incendiaries, who are a danger in the community. The man who, to get the benefit of an insurance, sets fire to his own property, endan-

Lackey *vs.* The Georgia Company.

gers the property of his neighbor. The object of the law is to prevent double insurance; to stop, if possible, the existence of property-holders, with over-insurance upon their property.

Now, it is just as entirely within this public policy to have a second insurance, which one *thinks* is good as to have one which is really good. The danger of a burning is the same in both cases—nay, the very fact that one has fraudulently procured an over-insurance is, *prima facie*, a suspicious circumstance. The public evil, which the law intended to prevent, is just the same, perhaps greater, if the second insurance be a fraudulent one.

Technically, it may be true that there is no second insurance; but to give this construction to the statute, would, as it seems to us, be indeed sticking in the bark. Such is not the usual mode of construing even criminal statutes. Our law against bigamy provides a punishment for one who *marries* having at the time another wife living. But, says this mode of reasoning, the second marriage is void, one cannot *marry* with a wife living. So, too, we make it penal to alter a promissory note; yet, in fact, the alteration is void, and if *detected* can hurt no one.

Laws are not to be so construed. We must look to the manifest intent of the law, and take care not to give it such a construction as will make the intent fail. The manifest intent in this law is to prevent the existence of persons in the community who have an *inducement* to set their houses on fire. To say that this law does not apply to the case of a man, who, in fact, has this inducement, but who, if his fraud is discovered, cannot get the benefit of it, is, as it seems to us, making the law of very little effect. We can easily see how this insurer might get the benefit of both policies. His failure turns only on his being *found out*. Perhaps, even now, this second company does not know of the existence of the first policy, and if the plaintiff recovers from the Home, he may yet sue the other. In a suit against them he would

not be bound by anything he now sets up. Perhaps he can, notwithstanding his present plea, show that he *did* give the second company notice. Are they parties here? Do they know all he now admits.?

We are clear that the taking out the second policy without the consent of the first company "voids the policy," and that the other fact, to-wit: that this second policy, as appears from the proof, is capable of being resisted and treated as null by the company that issued it, in consequence of the misrepresentations of the insured, does not help the case.

Judgment affirmed.