[S. F. No. 3693.    Department Two.—April 1, 1904.]

## STEWART LAW AND COLLECTION COMPANY, Appellant, v. COUNTY OF ALAMEDA, Respondent.

RECOVERY OF TAXES ILLEGALLY COLLECTED—PLEADING—PAYMENT UNDER PROTEST NOT REQUIRED—PRESENTATION OF CLAIM TO SUPERVISORS. —In an action based on section 3804 of the Political Code, to recover from the county taxes illegally assessed and collected by the county for road purposes on property situated within the limits of a city, it is not necessary to aver in the complaint nor in the claim presented to the supervisors that the taxes were paid under protest. It is sufficient to aver the facts showing the illegality of the tax collected, and that a verified claim of plaintiff for refunding of the tax was presented to the board of supervisors for allowance, and that they had refused to refund the tax.

ID.—CONSTRUCTION OF CODE—INDEPENDENT REMEDY.—The remedy given by section 3804 of the Political Code affords independent relief in all cases coming within its provisions, and is not excluded by the terms of section 3819 of the Political Code, nor is the plaintiff, proceeding under the terms of section 3804, required to proceed in any manner under section 3819.

APPEAL from a judgment of the Superior Court of Alameda County.    F. B. Ogden, Judge.

The facts are stated in the opinion.

W. B. White, and E. A. Holman, for Appellant.

U. S. Webb, Attorney-General, and John J. Allen, District Attorney, for Respondent.

CHIPMAN, C.—Action to recover certain taxes assessed by defendant county for road purposes on property situated within the city of Oakland. Defendant interposed a general demurrer to the complaint, which was sustained. Plaintiff failed to amend its complaint, and judgment passed for defendant, from which this appeal was taken.

It appears from the complaint that prior to the fiscal year 1897-1898 the boundaries of said city were altered so as to include certain territory formerly known as road districts of "Temescal" and "Bay"; that certain persons, plaintiff's

assignors, were during the whole of said fiscal year the owners of certain property situated in said territory so annexed to said city. It is alleged "that a tax for road purposes for said fiscal year of 1897-1898 was, by said defendant county, erroneously assessed upon said property of plaintiff's assignors, then, as aforesaid, forming a part of said city of Oakland, and said tax was, by said defendant county, erroneously collected." The verified claim of plaintiff was presented to the board of supervisors for allowance, and payment was refused. There is no allegation that the payment of the taxes was made under protest. Defendant contends, in support of the judgment,—1. That the payment having been voluntarily made, presumably with knowledge of the law that the tax was illegal, no recovery can be had; and 2. That there can be no recovery, because plaintiff did not proceed as directed by section 3819 of the Political Code.

1. The action is brought under section 3804 of the Political Code, which reads in part as follows: "Any taxes, penalties or costs thereon paid more than once, or erroneously· or illegally collected, or any taxes paid upon an assessment in excess of the actual cash value of the property so assessed, by reason of a clerical error of the assessor, as to the excess in such cases, or any tax paid upon an erroneous assessment of improvements on real estate not in fact in existence when said tax became a lien, may, by order of the board of supervisors, be refunded by the county treasurer." The statute provides a period of limitation within which the verified claim of the taxpayer must be filed with the supervisors, but the demurrer raises no question on this point.

We think the cases of *Hayes* v. *County of Los Angeles,* 99 Cal. 74, and *Pacific Coast Co.* v. *Wells,* 134 Cal. 471, supported as they are by the decisions of other appellate courts, under statutes similar to our own, must control the question now here, and require a reversal of the judgment. In the first of these cases certain real estate had been assessed to the owner, who paid the tax, and also had been assessed to another person, who did not pay the tax. The property was advertised and sold for delinquent taxes, the purchaser voluntarily paying the amount bid. His assignee of the certificate of purchase was refused a deed by the tax-collector on the ground that the tax had been paid prior to the payment

shown in the certificate. He thereupon presented a claim for the amount paid by his assignor on account of the double assessment, which the board refused to allow, and he thereafter brought his action. The court held that it was not optional with the supervisors to refund the amount paid, but that the word "may" in the act means "shall." It was also held that the doctrine of *caveat emptor* as applied to purchasers at a tax-sale had no application, and the court said: "Section 3804 was enacted to do justice in a class of cases where, but for its provisions, the application of the doctrine of *caveat emptor* would work a hardship to citizens who had paid money which it was inequitable for the county to retain." The question arising upon a voluntary payment was more fully discussed in the second of the cases above cited. In that case the plaintiff by mistake returned in his statement to the assessor property in excess of that owned by it, although in striking the balance of assessable property the true amount was stated. The assessor assumed to correct this balance to make it conform to the amount shown in the return statement. When the tax-bill was presented plaintiff discovered the mistake, but voluntarily paid the full amount of the taxes charged, and thereupon presented its claim to the supervisors under section 3804, which was allowed. The auditor refused payment, and plaintiff petitioned the court for a writ of mandate, which was refused, and the petition was dismissed on demurrer.

Answering the question whether the tax thus illegally collected should be retained by the county authorities, this court said: "It surely would be in violation of honesty and fair dealing for them to do so. Is it in violation of law for them to refund it? We think not. The board were authorized to order the money refunded under section 3804 of the Political Code" (quoting it). "This being a remedial statute, it should be liberally construed so as to carry out its intent and object." The court quotes approvingly from *Matter of Adams* v. *Monroe County Supervisors*, 154 N. Y. 625, where, under a similar statute, the court said: "This is not a common-law action to recover an illegal tax paid under duress in law or in fact. . . . This is a proceeding under a special statute, which confers power upon the supervisors to refund to any person the amount of an illegal tax collected

from him. . . . This proceeding was not governed by the technical rules that apply to actions at law to recover money voluntarily paid. The statute furnishes a convenient and summary remedy which enables the county to restore without litigation or expense what it ought not to retain, and a citizen who has paid an illegal tax, without waiting to have his property advertised and sold, to obtain justice. The benefits of the statute are not confined to parties who have paid an illegal tax upon compulsion, but extend to all persons who have paid taxes they were not legally bound to pay." So held also in *DuBois* v. *Lake County*, 10 Ind. App. 348, and other cases cited. Under similar statutes the question will be found similarly decided in the following cases: *City of Indianapolis* v. *McAvoy*, 86 Ind. 587; *Board of Commissioners of Howard County* v. *Armstrong*, 91 Ind. 528; *The City of Indianapolis* v. *Vajen*, 111 Ind. 240. In these cases the general rule as to voluntary payments is conceded and the authorities are cited, but it was held that the statute "changes the rule recognized by the authorities cited above on the subject of refunding taxes, and requires taxes, however voluntarily paid, to be refunded upon proof that such taxes were wrongfully assessed." (*Commissioners of Howard County* v. *Armstrong*, 91 Ind. 528.) In an Iowa case (*Lauman* v. *County of Des Moines*, 29 Iowa, 310,) the court said of the statute: "Cases arising in other states where they have no such statutes are of little assistance, giving us next to no aid. To recover this money it makes no difference that the plaintiff failed to seasonably apply to the county board of equalization, nor that he knew that the property was treated as taxable, nor that he may have assisted in listing the same. If, notwithstanding all this, it was thereafter found, that is, *after he had paid the same,* to be erroneous or illegal, the supervisors are required to refund the same. And thus it will be seen that the citizen has a continuing security that his tax, if paid under an illegal or erroneous assessment or levy, shall be returned to him. The law thus, as it were, holds out an inducement to him to be prompt in rendering aid to the assessor, and in the payment of his taxes."

If the legislature had intended to restrict the power of the board to refund to cases where the taxes had been involuntarily paid or paid under protest, it would have so said, as

it did in the cases brought under section 3819, where relief is given by action in the courts.

Some remarks in the decisions of the court may at first glance appear to be in conflict with the conclusion above reached. In *Younger* v. *Board of Supervisors,* 68 Cal. 242, for example, it was said that the money, being voluntarily paid, was not recoverable back by action. But the only question decided was, that "a tribunal exercising judicial powers cannot be compelled how to act." In *Loomis* v. *The County of Los Angeles,* 59 Cal. 456, (apparently followed in *Brooks* v. *County of Tulare,* 117 Cal. 465,) it was held that section 3804 does not apply. In the Tulare County case the court said there was a plain distinction between it and the case of *Hayes* v. *Los Angeles County,* 99 Cal. 74, thus, inferentially at least, approving that case, as the court distinctly did in *Pacific Coast* v. *Wells,* 134 Cal. 471. In this latter case, *Phelan* v. *San Francisco,* 120 Cal. 1, and *Rooney* v. *Snow,* 131 Cal. 51, were shown not to be in conflict with the case then before the court. In *San Diego etc. Co.* v. *La Presa School Dist.,* 122 Cal. 100, the action was at common law, section 3804 was not drawn in question, and no claim was first presented to the board of supervisors. It must be admitted that there is apparent conflict in the decisions, but we think this has arisen in part through expressions not necessary to the decision in some of the cases, and in part from confounding the rule applicable to common-law actions where payment was voluntary with the rule which should apply where the action was brought under section 3804 after the board of supervisors has refused to refund the tax. However this may be, we are clearly of the opinion that section 3804 was intended to, and plainly does, afford relief in all cases coming within its provisions. In making a claim under this section to the board of supervisors it is not required that the claimant should allege or prove involuntary payment or payment under protest; neither is such allegation or proof afterwards necessary where the claimant, on refusal of the board to refund the tax, resorts to the court to enforce the same claim.

2. It is urged that plaintiff cannot recover because it did not proceed under section 3819 of the Political Code. The section gives an action against the county where the owner

of any property assessed therein claims that the assessment is void in whole or in part, and the owner pays the tax under protest, in writing stating the grounds of his claim. "Such owner may at any time within six months after such payment, bring an action against the county." Several cases have been brought under this section that found their way here, but the court has not heretofore held, nor been asked to hold, that the remedy there afforded is exclusive, as is now contended. *Pacific Coast Co.* v. *Wells,* 134 Cal. 471, was decided since section 3819 was in force, although the question now presented was not raised. We think section 3804 was intended to give relief through the board of supervisors without the necessity of resorting to the courts, while section 3819 was intended to furnish a remedy in certain cases through the courts alone, and when the directions of the act are followed it is provided that the payment of the tax "shall in no case be regarded as voluntary payment." Section 3819 furnishes a remedy entirely independent of that afforded by section 3804 and cannot be regarded as exclusive. The owner of any property assessed in the county "may pay the same to the tax-collector under protest," etc., and have his action in the court as by the act provided. But there is nothing in the act from which an intention of the legislature may be derived that the board of supervisors may not, under the provisions of section 3804, proceed to hear and determine a claim presented under that section. Cases may arise under this latter section which could not be reached by section 3819. Other cases may arise where the taxpayer might at his option proceed under whichever section he thought most likely to give him speedy relief. Respondent's contention in effect would make section 3819 work a repeal of section 3804. But to do this it should appear from the last act (and section 3819 was passed subsequently to section 3804) that it was intended to take the place of or repeal the former, or that the two acts are so inconsistent that effect cannot be given to both. (*Capron* v. *Hitchcock,* 98 Cal. 427.) This cannot be said of the section in question.

We advise that the judgment be reversed, with direction to overrule the demurrer.

Gray, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed, with direction to overrule the demurrer.

McFarland, J., Henshaw, J., Lorigan, J.